Exhibit 1
Lease

EXHIBIT "C"

## COMMERCIAL LEASE

Indenture of Lease made as of the _27_ day of May, 2015, by and between, G-Four LLC of, P.O. Box 368, Sagamore Beach, MA 02562 (hereinafter referred to as "Landlord") and Joseph Vaudo of 298 Route 6A, P.O. Box 248, Sandwich, MA 02563 hereinafter referred to as "Tenant").

### WITNESSETH

**EXHIBITS**

1. The following exhibits are attached to this Lease and made a part hereof:

Exhibit A -    Description of Premises.
Exhibit B -    Rent Payments and Additional Provisions.
Exhibit C -    First Right of Refusal Option.

**PREMISES**

2. Landlord hereby demises and leases unto Tenant and Tenant hereby Leases from Landlord, subject to the conditions herein below set forth, the premises described in Exhibit A (hereinafter called "the Premises").

**TERM**

3. TO HAVE AND TO HOLD, the Premises for a term of Ten (10) Years commencing August 1, 2015. Tenant shall have the option to renew this lease for an additional Ten (10) year term. See Paragraph 28.

**RENT**

4. Tenant agrees to pay Landlord as rent for the Premises the amounts set forth in Exhibit B. Until further notice from Landlord all rent and other payments due hereunder to Landlord shall be by check payable to G-Four, LLC and mailed to said payee at Eleanor G. McMichen, R.E. Manager, P.O. Box 368, Sagamore Beach, MA 02562. Landlord acknowledges receipt of rent for the first month of the lease term being July, 2015.

**ADDITIONAL RENT AND TAXES/INTEREST**

5. (a) Tenant further agrees that during the original term of this Lease and any extended or additional term and for such further time as Tenant shall hold the Premises, or any part thereof, Tenant shall pay to Landlord as additional rent all taxes and

1

EXHIBIT "C"

COMMERCIAL LEASE

Indenture of Lease made as of the __27__ day of May, 2015, by and between, G-Four LLC of P.O. Box 368, Sagamore Beach, MA 02562 (hereinafter referred to as "Landlord") and Joseph Vaudo of 298 Route 6A, P.O. Box 248, Sandwich, MA   02563 hereinafter referred to as "Tenant").

WITNESSETH

EXHIBITS

1. The following exhibits are attached to this Lease and made a part hereof:

Exhibit A -    Description of Premises.
Exhibit B -    Rent Payments and Additional Provisions.
Exhibit C-    First Right of Refusal Option.

PREMISES

2. Landlord hereby demises and leases unto Tenant and Tenant hereby Leases from Landlord, subject to the conditions herein below set forth, the premises described in Exhibit A (hereinafter called "the Premises").

TERM

3. TO HAVE AND TO HOLD, the Premises for a term of Ten (10) Years commencing August 1, 2015.  Tenant shall have the option to renew this lease for an additional Ten (10) year term.  See Paragraph 28.

RENT

4. Tenant agrees to pay Landlord as rent for the Premises the amounts set forth in Exhibit B.  Until further notice from Landlord all rent and other payments due hereunder to Landlord shall be by check payable to G-Four, LLC and mailed to said payee at Eleanor G. McMichen, R.E. Manager, P.O. Box 368, Sagamore Beach, MA  02562. Landlord acknowledges receipt of rent for the first month of the lease term being July, 2015.

ADDITIONAL RENT AND TAXES/INTEREST

5. (a) Tenant further agrees that during the original term of this Lease and any extended or additional term and for such further time as Tenant shall hold the Premises, or any part thereof, Tenant shall pay to Landlord as additional rent all taxes and

1

assessments whatsoever (including betterment assessments, sewer use and water charges, so-called,) which may be payable for or in respect of the Premises, or any part thereof, during the term of this Lease, and for such further time as Tenant shall hold the Premises or any part thereof, Landlord hereby agreeing to furnish Tenant with copies of all bills for such taxes and assessments promptly upon receipt so as to avoid penalties for late payment.

(b) If Landlord's first mortgage lender requires monthly payments for real estate taxes Tenant shall reimburse Landlord for all such payments within ten (10) days after the same are due and payable by Landlord, but if Landlord's first mortgage lender does not require such monthly payments, all payments for real estate taxes shall be made semiannually or quarterly to Landlord after tax installment bills have been issued, but in any event in a manner sufficient to provide for an amount adequate to pay said taxes as and when they are due and payable. If Tenant shall fail to make such payment, then in addition to all other rights and remedies to which Landlord may be entitled, Tenant shall be liable for any interest or penalty charges which may result from late payment of said taxes by Tenant and Tenant shall pay Landlord a late penalty in the amount of One Hundred ($100.00) Dollars for each payment that is more than fifteen (15) business days late.  In addition to the foregoing, Tenant shall be solely responsible for all personal property taxes of every nature imposed upon all fixtures, equipment and other personal property of every nature on the Premises belonging to Tenant.

(c) In the event the Landlord shall receive any abatement or refund of said taxes for any tax year for which Tenant shall have paid to Landlord any amount for said taxes, Tenant shall be entitled to receive from Landlord the amount thereof, less, however, the reasonable expenses (including without limitation reasonable attorney's fees) of Landlord incurred in obtaining such abatement.

(d) Landlord, upon written request of Tenant duly made, shall make and prosecute applications for abatement of taxes.  If, however, Landlord fails to commence or there after diligently continue the prosecution of applications for abatement of taxes within fifteen (15) days of Tenant's written request so to prosecute, then Tenant shall have the right to prosecute said applications for abatement of taxes in the name of Landlord or Tenant, provided, however, that the expenses of prosecuting such applications shall be borne by Tenant. At Tenant's request, Landlord shall furnish Tenant with all data and information in Landlord's possession concerning the Premises, and shall execute and deliver all documents necessary for Tenant's application.

## LANDLORD'S WARRANTY/QUIET POSSESSION

6. (a) Landlord represents and warrants to Tenant that Landlord is successor in interest to the Gallo Family Trust and has the lawful right and authority to enter into this Lease for the entire term hereof (including any extension thereof).

(b) Landlord covenants and agrees that Tenant, upon performance of its obligations under this Lease, shall peaceable and quietly have, hold and enjoy the Premises throughout the original term of this Lease and all Extension Periods.

## TENANT'S FIXTURES/ALTERATIONS

7. (a) Tenant may install in the Premises such buildings, fixtures (trade or otherwise) and equipment as Tenant deems desirable, however, all of said items which are not removable shall become part of the property. Tenant may replace, said building and fixtures and equipment, in the Premises, at any time and from time to time during the term or any Extension hereof. Tenant shall make all repairs or replacement at Tenant's expense in connection with the installation or removal of any such building and fixtures or equipment, as provided in this paragraph.

(b) All buildings, landscaping and parking areas which may at any time be installed or placed in or upon the Premises, by or at the expense of Tenant, shall become the property of the Landlord. All signs, counters, shelving, trade and light fixtures, contents, and other store equipment are the property of the Tenant and may be removed upon the termination of the tenancy.

## ASSIGNING AND SUBLETTING

8. Except as provided herein, Tenant shall not assign this Lease or any interest therein without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed, but Tenant shall remain liable to Landlord during the original term and any Extension Period for the payment of rent and performance of all obligations of Tenant hereunder.

## HOLDING OVER

9. If Tenant holds over or remains in possession of Premises after expiration of the original term or any Extension Period of this Lease, without any new lease of said premises being entered into between the parties hereof, or any option herein contained being exercised by written notice, such holding over or continued possession shall create a tenancy at will only at the last monthly rental and upon the terms (other than length of term, or option for extension) which may at any time be terminated by either party by one (1) month's written notice to the other party.

## REPAIRS AND MAINTENANCE

11. (a) Landlord shall not have any obligation to make any repairs or alterations to the Premises or any part thereof. Throughout the original term of this Lease, Tenant covenants and agrees to maintain the Premises and all additions and improvements made

3

upon them in such repair, order and condition as the same are in at the commencement of said term or may be put in by Landlord or Tenant during construction of the building, parking and landscaping approved hereunder, reasonable wear and tear, damage by fire or any other casualty, taking by eminent domain excepted. Without limiting the generality of the foregoing, Tenant shall: provide regular maintenance and repairs to all heating, air conditioning, hot water and other equipment serving the Premises; provide janitorial and cleaning services; remove snow and ice from the parking area and walkways; sand, patch the parking area; repaint interior surfaces; and replace broken glass with glass of the same kind and quality.

(b) Tenant is responsible for structural repairs and replacements including but not limited to repairs and replacements to the roof and exterior walls of said building and to major items of equipment such as HVAC (heating, ventilation, air conditioning) equipment.

(c) Landlord is not responsible for any repairs, maintenance etc. on the premises.

## DAMAGE OR DESTRUCTION

12. If the Premises shall be damaged or destroyed by fire or other cause, the same shall be repaired or replaced or restored to the condition the same were in immediately preceding such fire or other cause by, and at the expense of Tenant, the base rent under Exhibit B, additional rent and any other charges shall continue, but, during such time as the store may be closed to a maximum of 4 months, the rents and charges shall be reduced by 50%. If the Premises are totally damaged or are rendered wholly untenantable by fire or other cause so that they cannot reasonably be expected to be restored or rebuilt within a six (6) month period, either Landlord or Tenant may within thirty (30) days of the occurrence of such damage, terminate this Lease upon fourteen (14) days' prior notice in writing to the other. Notwithstanding anything to the contrary in this lease contained, if tenant shall not have in fact substantially completed repair of such damage within six (6) months from the occurrence of such fire or other casualty, Landlord may terminate this Lease by written notice to Tenant and thereafter this Lease shall be of no further force or effect. Upon the termination of this Lease under the conditions herein provided for, Tenant's liability for rent accruing thereafter shall cease as of the day following the casualty.

## INSURANCE

13. (a) Landlord, agrees: to insure the building and all fixtures, additions and improvements which are a part of the Premises against damage by fire, including extended coverage, and to keep them so insured during the original term of the lease and any extension. Tenant to pay for insurance with 15 days of receipt of bill.

(b) Tenant at its own cost and expense shall also provide and maintain:

4

(i)      Public liability insurance having a minimum per occurrence limit of Two
Million Dollars against all claims which may be brought for bodily
injury, death or damage to property of third persons. Landlord shall be
named as an additional insured;

(ii)     Workers' Compensation Insurance or insurance required by similar
employee benefit acts as well as insurance having a minimum per
occurrence limit of One Million Dollars against all claims which may be
brought for personal injury or death of Tenant's employees;

(iii)    Ten (10) days prior to the expiration of each such policy, Tenant shall
deliver a binder renewing each such policy, which binder shall provide
that at least ten days' written notice of any change in or cancellation
thereof shall be given by the insurance company to Landlord. Tenant
shall pay the premiums for renewal insurance and deliver to Landlord the
original policy or certificate thereof and duplicate receipt evidencing
payment thereof; and

(iv)     At the commencement of the term of this Lease, Landlord will deliver to
Tenant the Premises insurable as called for herein; thereafter Tenant
shall not violate or permit to be violated any of the conditions or
provisions of any such policy, and Tenant shall perform and satisfy the
requirements of the companies writing such policies so that at all times
companies of good standing satisfactory to Landlord shall be willing to
write and/or continue such insurance.

## EMINENT DOMAIN

14. (a) In the event of any taking for any public or quasi-public use by exercise
of the right of eminent domain or by deed in lieu thereof between Landlord and those
having the authority to exercise such right (hereinafter called "Taking") of the whole of
the Premises then this Lease and the term hereof shall cease and expire as of the date of
such Taking and the base rent under Exhibit B and any additional rent and all other
charges paid for a period after such Taking shall be refunded to Tenant upon demand.

(b) In the event of Taking of a substantial part of the Premises or in the event of a
Taking so as to prevent or substantially prevent adequate access to Premises, then
Tenant may elect to terminate this Lease by giving notice of termination to Landlord on
or before the date which is ninety (90) days after receipt by Tenant of notice that the
Taking or denial or diminishing of access or termination of the Tenant's lease shall have
occurred. Upon the date specified in such notice of termination this Lease and the term
hereof shall cease and expire, and the base rent under Exhibit B and any additional rent
and charges paid for a period after such date of termination shall be refunded to Tenant
upon demand.

5

(c) If this Lease be not terminated or if Tenant does not elect to terminate this Lease as aforesaid then the award or payment for the Taking shall be paid to and used by Landlord for restoration as hereinafter set forth and Landlord shall promptly commence and with due diligence continue to restore the Premises remaining after the Taking to substantially the same condition and tenant ability as existed immediately preceding the Taking. During the period of any restoration, the base rent under Exhibit B, additional rent, and other charges shall be abated justly and equitably. Nothing herein contained shall be deemed or construed to prevent either Landlord or Tenant from enforcing and prosecuting a claim for the value of its respective interest in any condemnation proceedings. The Landlord agrees that it's interest in the premises is the land and Tenant agrees his interest is the improvements to the land and the value of the business conducted at the premises. For purposes of division of any award between Landlord and Tenant, such division shall be made equitably in consideration of the foregoing.

## MORTGAGES

15. (a) This Lease shall be subject and subordinate in all respects to any mortgage granted by Landlord. Except for such encumbrance, this Lease shall be subject and subordinate in all respects to all first mortgages to recognized lending institutions which may hereafter affect the Premises and each and every of the advances which have heretofore been made or which may hereafter be made there under, and to all renewals, modifications, consolidations, replacements and extensions thereof, provided that the holder of any such mortgage delivers to Tenant a written agreement in recordable form consenting to this Lease and agreeing that Tenant shall not be disturbed or canceled at any time, except in the event Landlord shall have the right to terminate this Lease under the terms and provisions set forth herein, and agreeing further that proceeds of insurance and taking awards be applied as provided for in this Lease. In confirmation of such subordination, Tenant shall execute promptly, without cost or charge, any instruments or certificates that Landlord or any mortgagee may require.

(b) Landlord shall make all payments required to be made under the provisions of any mortgage and ground or underlying lease affecting the Premises in default of which Tenant shall have the right, but not the obligation, to cure any such default and to deduct the cost thereof from the base rent or additional rental or other charges becoming due under this Lease or to require the payment of such cost from Landlord upon demand.

(c) If Landlord mortgages the Premises, Landlord shall require the Mortgagee to enter an attornment agreement reasonably satisfactory to Tenant.

## TENANT'S COVENANTS

16. In addition to all other covenants and agreements of Tenant contained herein, Tenant hereby covenants with Landlord that Tenant during the said term and for such further time as it shall hold the Premises or any part thereof will pay all charges for heat, water, gas, electricity, sewerage, trash removal and all other utilities services used by Tenant upon the Premises; will save Landlord harmless from all loss and damage occasioned by release of toxic or hazardous materials at or upon the Premises, or the use of water in or escape of water from the Premises or by the bursting or cracking of the water pipes, including the sprinkler system, if any; at the expiration of said term will remove its goods and effects and those of all persons claiming under it and will peaceably yield up to Landlord the Premises and all additions and improvements made upon them (except those which Tenant is permitted to remove hereunder) and leave them clean and in such repair, order and condition as the same are in at the commencement of said term or may be put in by Landlord or Tenant during the continuance thereof, reasonable wear and tear and damage by fire or any other casualty or takings excepted; will not commit any nuisance on the Premises; will not overload the Premises; will not carry on any business, trade or occupation upon the Premises or make any use thereof which shall be unlawful or offensive or contrary or any law or ordinance for the time being in force; will not do any act or thing upon the Premises which will make them uninsurable against fire or which is liable to increase the premium for fire insurance on the Premises over the normal premium at the time in question for the stipulated use of the Premises, and if such premiums are increased, Tenant shall pay the amount of such increase; and will keep the Premises equipped with all safety appliances required by law or ordinance, or any order or regulation of any public authority because of the use made of the Premises; and Landlord may show Premises to others at mutually agreeable times during normal business hours, and at any time during normal business hours within one hundred eighty (180) days before the expiration of the term (as the same may be extended), may affix to any suitable part of the exterior of the Premises a notice of reasonable size for letting or selling the Premises and keep the same as affixed without molestation by Tenant. Tenant will not operate a restaurant, dine in or takeout on the premises. This shall not prohibit the cooking of individual seafood products to be sold to retail customers.

## TENANT'S DEFAULT

17. If any sum or sums due as rent or additional rent as herein provided and set forth or any part thereof shall be unpaid for a period of fifteen (15) days after written notice of such default has been given by Landlord to Tenant, or if Tenant shall violate or be in default in its observances or performance of any of its covenants herein contained, except default in the payment of base rent or additional rent, and shall have failed to take and prosecute appropriate steps to remedy such breach or default within twenty (20) days after written notice of such breach or default has been given by Landlord to Tenant, or if the estate hereby created shall be taken on execution or other process of law and

7

shall not be redeemed for twenty (20) days after Landlord shall have given Tenant written notice of such taking, or if Tenant be declared bankrupt or insolvent according to law, or if any assignment shall be made of its property for the benefit of creditors, then, and in each of the said cases (after the expiration of the aforesaid fifteen (15) day or twenty (20) day period as applicable), Landlord lawfully may (notwithstanding any waiver of any former breach of covenant or waiver of the benefit hereof or consent in a former instance) immediately or at any time thereafter while such default or other stipulation aforesaid continues and without further demand or notice enter into and upon the Premises or any part thereof in the name of the whole and repossess the same as of its former estate and expel Tenant and those claiming through or under it and remove its effects (forcibly if necessary) without being deemed guilty of any manner to trespass and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid this Lease shall terminate and Tenant covenants that in case of such termination under the provisions of statute by reason of the default of Tenant, Tenant will forthwith pay Landlord as damages a sum equal to the amount by which the base rent, additional rent, and other payments called for hereunder of the remainder of the original term or of any extensions thereof, and, in addition thereto, will during the remainder of the original term and of any extensions thereof pay to Landlord on the last day of each calendar month the difference, if any, between rental which would have been due for such month had there been no such termination and the sum of the amount being received by Landlord as rent from occupants of the Premises, if any, and the applicable pro rated amount of the damages previously paid to Landlord, Landlord hereby agreeing to use reasonable efforts to minimize damages.

In the event that Tenant is more than fifteen (15) business days late in paying said rent, Landlord will assess a One Hundred ($100.00) late charge for each monthly rental payment that is late.

At Landlord's option, if any default occurs, Landlord may terminate this lease and all covenants of the Landlord hereunder shall cease without prejudice to the right of the Landlord to recover from Tenant all rent accruing up to and through the expiration date of the term of this Lease. Tenant shall be liable for all damages sustained by Landlord including without limitation, repayment to Landlord of all costs of re-letting and repossessing the Lease Premises, including reasonable attorneys fees, deficiency in rent (in the case of reletting), brokerage fees and the expenses of placing the Leased Premises in first-class rentable condition.

## USE AND OCCUPANCY

18. The Premises may be used and occupied for wholesale and retail seafood market with all accessory uses reasonably associated therewith provided any such use is permitted under applicable Federal, state and municipal laws and regulations. The premises may not be used as a restaurant, eat in or takeout.

8

SIGNS

19. Tenant shall have the right to install, maintain and replace, at its own cost and expense, after the prior written consent of Landlord in each instance, such signs on the Premises and in common areas such as driveways, parking areas and sidewalks as it determines, provided the same shall be in compliance with all laws, orders, rules and regulations of all governmental authorities having jurisdiction thereof.

NOTICES

20. Every notice, approval, consent or other communication authorized or required by this Lease shall not be effective unless in writing and sent by United States registered or certified mail, return receipt requested, directed, if to Tenant to the address listed below; and if to Landlord at the address listed herein or such other address as either party may designate by notice from time to time.

Landlord:    G-Four LLC, Eleanor G. McMichen, R.E. Manager,
             P.O. Box 368, Sagamore Beach, MA  02562

Tenant:      Joseph Vaudo
             298 Route 6A, P.O. Box 248, Sandwich, MA  02563

WAIVER

21. One or more waivers of any covenant or condition by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent and approval by Landlord requiring the other party's consent or approval to or of any similar subsequent act. The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

INVALIDITY OF CERTAIN PROVISIONS

22. If any provision of this Lease shall be invalid or unenforceable, the remainder of the provisions of this Lease shall not be affected thereby and each and every provision of this Lease shall be enforceable to the fullest extent permitted by law.

LANDLORD'S INTEREST

23. (a) Landlord reserves the right to assign or transfer any and all of its rights, title and interest under this Lease, including but not limited to the benefit of all covenants of the Tenant hereunder. Notwithstanding anything contained in this Lease to

the contrary, it is specifically understood and agreed that the obligations imposed upon Landlord hereunder shall be binding upon Landlord and Landlord's successors in interest only with respect to breaches occurring during Landlord's successors' respective ownership of Landlord's interest hereunder, and Landlord and its said successors in interest shall not be liable for acts and occurrences arising from and after the transfer of their interest as Landlord hereunder.

(b) If all or any part of Landlord's interest in this Lease shall be held by a trust at any time or times, no trustee, shareholder or beneficiary of said trust shall be personally liable for any of the covenants or agreements, express or implied, hereunder; the Landlord's covenants and agreements shall be binding upon the trustees of said trust as trustee, as aforesaid, and not individually and shall be binding upon the trust estate.

## INDEMNIFICATION

24. Tenant and Landlord agree to indemnify and defend each other against, and to save each other harmless from, any and all claims of whatever nature for injury or damage to persons or property in or about the Premises caused by their respective negligence or intentional conduct or by the negligence or intentional conduct of their respective employees, agents or contractors.

## NET LEASE

25. It is understood and agreed that Tenant, during the term hereof, is to do all things and make all payments connected with the Premises or arising out of any occupation of the Premises or any part thereof or its appurtenances, and under no condition or contingency is Landlord to be called upon to do or perform any act or action or be subject to any liability or responsibility or to make any payments with respect to the Premises or any part thereof, all so that this Lease shall yield net to Landlord the rent specified in this Lease.

## NOTICE OF LEASE

26. This lease shall not be recorded. A Notice of Lease may be recorded.

## ADDITIONAL PROVISIONS

27. Landlord represents that it is the owner and occupant of the Premises and has full authority to enter this lease. Landlord represents that it is comprised of all the former beneficiaries under the Gallo Family Trust and is the successor entity to said Family Trust. As of the date hereof, Land Court records still show the Family Trust as owner of the Premises through inadvertent oversight which Landlord will work to correct within a reasonable time.

28. The Option to Renew this lease shall be exercised by Tenant in writing and
Postmarked or emailed to Landlord not less than 60 days prior to the expiration of the
Original term.  Rent and any additional rent for the extended term shall be negotiated by
The parties in good faith and based on fair market rent under all the terms and conditions
Of this lease prevailing at the time of exercise of the option to renew.  If no new rent
Schedule is agreed on by the date of commencement of the extended term, the last rent
being paid shall continue until the new schedule is decided at which time any difference
shall be adjusted back to the commencement of the extended term.  If negotiations fail to
Produce agreement within 40 days of beginning, either party shall have the right to
require arbitration the cost of which shall be equally shared.

29. The Tenant shall promptly begin and conduct the Town of Sandwich and
State process for all permits required for the conduct of Tenant's business.  Zoning
Special Permit and Historic District applications shall be filed in the name of Landlord.
If any permit required for the Tenant's business is not final within four (4) months of the
date of this lease, Tenant shall have the option to terminate this lease by written notice to
The Landlord postmarked before the expiration of said four month period.

WITNESS the execution hereof under seal the day and year first written above.

LANDLORD:                                    TENANT:

G-Four LLC

By _____              _____
David Collins   Manager                    Joseph Vaudo

Exhibit A

11

1

Description of Premises

LOT 7, Land Court Plan 11508 F which is currently undeveloped.

The Premises includes direct access from Gallo Road and connection to and joint use of the parking and driveway facilities on adjacent Lot 8.

The Tenant intends to build an approximately 5,000 sq. ft. wholesale and retail Seafood Market with no restaurant, and to install all utilities, appliances and equipment necessary to conduct such business together with all reasonably accessory activities, together with parking and landscaping, Tenant will be responsible for obtaining all necessary licenses, permits, and Town approval to conduct said business. Tenant shall pay all related costs and expenses. Tenant has submitted a general site plan to Landlord which Landlord has approved. Parking and landscaping shall be as approved by the Sandwich Board of Appeals. Building design and appearance shall be as approved by the Sandwich Historic District commission.

Exhibit B

Lease Amounts and Additional Provisions

- Lease amounts:

  | | |
  |---|---|
  | Year 1-2 | $5,000.00 |
  | Year 3-4 | $5,500.00 |
  | Year 5-6 | $6,000.00 |
  | Year 7-10 | $6,500.00 |

- If the Lease commences upon any day of the month other than the first day of the month, then the rent for the first month of the Lease and the last month of the Lease shall be prorated for such months, and the rent for any balance of the term payable on the first of each month.

- All expenses associated with the operation shall become the sole responsibility of the Tenant.

- Tenant shall operate the premise as a wholesale retail fish and seafood market.

- Tenant shall be responsible for all internal and external maintenance and upkeep of the facility. Tenant shall be responsible for the water tightness of the buildings exterior envelope and maintenance as per Section 11.

- Tenant agrees to maintain the premises in good condition, reasonable wear and tear accepted.

- Tenant and those claiming under Tenant will use and occupy the Leased Premises solely for the operation of a wholesale retail seafood market, and such uses which are customarily ancillary to the primary uses of the Leased Premises and for no other purpose without Landlord's prior written consent. Tenant shall use the Leased Premises in accordance with the applicable zoning regulations and with all other present and future laws, ordinances, regulations, and orders of all governments, government agencies and any other public authorities having jurisdiction over the leased Premises. Restaurant use is specifically prohibited.

- If any governmental licenses or permits, shall be required for the proper and lawful conduct of Tenant's business or other activity carried on or in the Leased Premises, then Tenant, at its sole expense, shall procure (and or transfer) and thereafter maintain such licenses or permits and submit same to Landlord for inspection. In addition, Tenant agrees that it will pay before delinquency any and all assessments and public charters levied, assessed or imposed upon any business conducted in or from the Leased Premises or upon Tenant's fixtures, furnishings or equipment in the Leased Premises, and pay before and as due all license fees, permit fees and the like necessary for the conduct by tenant of any business conducted in or from the Leased Premises.

○   In the event that Tenant cannot procure said Licenses and permits prior to the
commencement of this lease, Landlord shall cooperate fully with Tenant to
obtain or transfer said licenses and permits.

LANDLORD
G-Four LLC

By _____

David Collins

TENANT

_____

Joseph Vaudo

14

Exhibit C
Right of First Refusal
Under a Lease dated May 2 7 2015

This Right of First Refusal to Purchase Real Estate is made on this the 2 7 day of
May, 2015, by and between G-Four LLC, hereinafter referred to as the "Seller" and
Joseph Vaudo, and his assigns, hereinafter referred to as the "PURCHASER".

WHEREAS, Purchaser desires to obtain a right of first refusal option to purchase certain
real estate owned by the Seller; and

WHEREAS, Seller agrees to grant Purchaser a right of first refusal or first option to
purchase real estate pursuant to the terms of the agreement; and

NOW, FOR AND IN CONSIDERATION of $10.00 and other good and valuable
consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed
as follows:

I

GRANT OF FIRST OPTION:      The Seller does hereby grant unto the Purchaser
the exclusive and irrevocable right, during the term of this agreement, of the first refusal
and first option to purchase, upon the terms and conditions hereinafter set forth, Seller's
property Lot 7 Land Court Plan 11508F

II.

EXERCISE OF FIRST OPTION:      This right of first refusal or first option to purchase
may only be exercised by Purchaser within twenty (20) days from notification by Seller
that Seller desires to sell the subject property. Seller is obligated to provide such notice
to Purchaser prior to offering the subject property to a third party. Delivery of Notice
shall be by certified mail to Tenant's notice address in Paragraph 20 of the lease.
Tenant's notice of exercise of this right to purchase shall be by certified mail to
Landlord's notice address in Paragraph 20 of the lease.

III.

TERMS OF PURCHASE:      In the event Seller elects to sell and Purchaser desires to
exercise his first refusal rights granted under the terms of this agreement, the terms of
the purchase shall be as follows:

   (a) $1.00 more than any bona fide offer to purchase received by Seller from any
        third party, whichever is higher.

15

IV.

**TITLE:** Within thirty (30) days after the Purchaser has exercised his or her right of first refusal, the Seller shall deliver to the Purchaser a Certificate of Title covering the property described in paragraph I above which shall reflect that marketable fee simple title to the subject property is vested in Seller and that same is insurable by a title insurance company licensed to do business in the State of Massachusetts. Should said Certificate reflect any exceptions to the title unacceptable to Purchaser, Purchaser shall notify the Seller in writing of any defects within fifteen (15) days (the title review period) and the Seller shall have reasonable time (but not more than 25 days) in which to make the title good and marketable or insurable, and shall use due diligence in an effort to do so. Cost to Seller not to exceed $4,500.00. If after using due diligence the Seller is unable to make the title acceptable to Purchaser within such reasonable time, it shall be the option of the Purchaser either to accept the title in its existing condition with no further obligation on the part of the Seller to correct any defect, or to cancel this Agreement. If this Agreement is thus cancelled, all money paid by Purchaser tom the Seller upon the execution of this Agreement or upon any extension shall be returned to the Purchaser, and this Agreement shall terminate without further obligation of either party to the other. If title is acceptable to Purchaser, the closing shall occur within fifteen (15) days after expiration of the "title review period". At Closing Seller shall convey the Purchaser by Warranty Deed subject only to exceptions acceptable to Purchaser.

V.

**TERM AND EXTENSION:** Shall run concurrently with the Lease including any extensions thereof to which it is attached and shall be valid if and only if Tenant is in good standing under said Lease.

VI.

**EXPENSE OF SALE:** All costs and expenses of the sale and purchase shall be paid by the party incurring them.

VII.

**POSSESSION:** Purchaser shall be entitled to possession of the property at closing.

VIII.

**TAXES:** Taxes shall be prorated as of the date of closing.

X.

16

DEFAULT: This contract shall be binding upon and inure to the benefit of the heirs, Administrators and assigns of the parties hereto and upon default in any of the terms of this Agreement the defaulting party agrees to pay all costs of Court and a reasonable attorney's fee.

XI.

Governing law:          This agreement shall be governed by the laws of the State of Massachusetts.

IN WITNESS WHEREOF, the parties have executed this Agreement on this the _____day of May, 2015.

G-Four, LLC

By_____
    David Collins      Manager
    SELLER

_____
    Joseph Vaudo
    PURCHASER

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF BARNSTABLE                              May    ,2015

Personally appeared before me, the undersigned authority in and for the county and state Aforesaid with within named Joseph Vaudo who acknowledged that he signed and delivered the foregoing agreement on the day and year therein stated.

Given under myh hand and official seal this the_____day of _____,2015

_____
Notary Public
My Commission Expires:

17

## COMMONWEALTH OF MASSACHUSETTS

COUNTY OF BARNSTABLE                                    May 27 ,2015

Personally appeared before me, the undersigned authority in and for the county and state
aforesaid with within named David Collins, Manager of G-Four, LLC who acknowledged that he
signed and delivered the foregoing agreement with full authority and on behalf of G-Four, LLC
on the day and year therein stated.

Given under my hand and official seal this 27th day of May , 2015

_Karen Marie Miller_

Notary Public My
Commission Expires: 1/4/19

The following is an agreement made between David Collins, Louis Gallo and Joseph Vaudo above and beyond the lease dated May 27, 2015 between G-Four LLC and Joseph Vaudo.

The lease for the property was to be $5000. per month starting June 1, 2015.  The above named agreed to cut the rent in half which would be $2500. per month for the months of June, July, August and September.  The $2500. is to be paid on the first of each of those months.

The months of June, July and August have been paid.  The $2500. for September is now due.  This was done to allow Mr. Vaudo some time to obtain the proper permits for a building per the lease. As of October 1, 2015 the amount per said lease will be $5000. due on the "first" of each month.